# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **KEITH HOWARD, et. al,**<br>    Plaintiffs,<br><br>           v.<br><br>**REDLINE GLOBAL, LLC.,**<br>    Defendant. | CIVIL NO. 21-1538 (RAM)(MDM) |

## REPORT AND RECOMMENDATION

Plaintiffs Keith Howard, Alvin L. Barrington, Leslie M. Díaz, Qiana Taylor, and Tangell Pollard (hereinafter referred to as the "Plaintiffs")[1] brought suit against their former employer, Redline Global, LLC ("Redline" or the "Defendant"). Plaintiffs bring claims pursuant to the Fair Labor Standards Act (29 U.S.C. § 201, *et seq*.) ("FLSA") and the Puerto Rico Wage Payment Statute (29 L.P.R.A. §§ 171, *et seq*., §§ 250, *et seq*., and §§ 271, *et seq*.) ("PRWPS"), for unpaid overtime. Defendant has failed to appear.

Currently before the Court is Plaintiffs' Motion for Default Judgment (Docket No. 20), which was referred to me for a Report and Recommendation. For the reasons set forth herein, I respectfully recommend that this Motion be **GRANTED**.

### I. Background

#### A. Factual Allegations

Redline is a domestic limited liability company that conducts business throughout the United States. Redline is organized and exits under the laws of Puerto Rico. (Docket No. 1, Complaint at ¶ 25). Redline's corporate headquarters is located in Dorado, Puerto Rico. (Docket No. 1 at ¶ 26). Redline provides disaster relief

---

[1] On February 16, 2023, plaintiffs Garry Chaderton and Leslie Díaz filed a Notice withdrawing their FLSA Consent Forms. (Docket No. 35).

services such as consulting, planning, and management, among other services. *Id.* at ¶ 4.

The Plaintiffs worked as Public Assistance Project Specialists, Subject Matter Experts, and Public Assistant Project Executives at Redline's office in Dorado, Puerto Rico. (Docket No. 30-2, Declaration of Keith Howard ("Howard Decl.") at ¶¶ 3, 4); (Docket No. 30-3, Declaration of Alvin Barrington ("Barrington Decl.") at ¶¶3, 4); (Docket No. 30-4, Declaration of Qiana Taylor ("Taylor Decl.")) at ¶¶ 3, 4); (Docket No. 30-5, Declaration of Tangell Pollard ("Pollard Decl.") at ¶¶ 3, 4). As alleged, Redline is part of interstate commerce and has an annual dollar volume of sales or business that exceeds $500,000.00. (Docket No. 1 at ¶ 37).

The Plaintiffs generally worked six to seven days a week, at an average of 10 to 12 hours per day. (Howard Decl. at ¶ 5; Barrington Decl. ¶¶ 5, 6; Taylor Decl. at ¶¶ 5, 6; Pollard Decl. ¶ 5). Plaintiffs consistently worked over 40 hours per week. *Id*. Redline paid the Plaintiffs a set hourly rate. (Howard Decl. at ¶ 6 ($65 per hour)); (Barrington Decl. at ¶ 7 ($90 per hour)); (Taylor Decl. at ¶ 7 (started at $55 and ended at $65 per hour)); (Pollard Decl. at ¶ 6 ($60 per hour)). The Defendant did not pay the Plaintiffs overtime at time-and-a-half their hourly rate for any hours worked in excess of 40 hours per workweek. (Howard Decl. at ¶¶ 6, 7; Barrington Decl. at ¶¶ 7, 8; Taylor Decl. at ¶¶ 7, 8; Pollard Decl. at ¶¶ 6, 7). Redline classified Plaintiffs as "independent contractors" and paid them through a Form 1099, which is reserved for payments to non-employees. *Id.*

While working for Redline, it was management at Redline who created Plaintiffs' schedule and management who instructed them on how to prioritize their projects. (Howard Decl. at ¶¶ 14, 25; Barrington Decl. ¶¶ 15, 25; Taylor Decl. at ¶¶ 16, 26; Pollard Decl. ¶¶ 15, 24). Except for two of the Plaintiffs, who happened to use their personal laptop computers, the Plaintiffs did not rely on their own tools to perform work for Redline. (Howard Decl. at ¶ 16; Barrington Decl. ¶ 16; Taylor Decl. at ¶ 17; Pollard Decl. ¶ 17). Plaintiffs were required to submit their work to Redline's managers for review. (Howard Decl. at ¶ 20; Barrington Decl. ¶ 20; Taylor Decl.

at ¶ 21; Pollard Decl. ¶ 23). Plaintiffs were also required to perform their jobs in strict compliance with federal guidelines and in accordance with the policies, tools, and forms provided by Redline. (Howard Decl. at ¶ 20; Barrington Decl. ¶ 20; Taylor Decl. at ¶ 21; Pollard Decl. ¶ 21).

### B. Procedural History

Plaintiff Keith Howard commenced this action on November 12, 2021. (Docket No. 1). On November 24, 2021, the Defendant was served with the Summons and Complaint at their actual place of business. (Docket No. 8). The Defendant's answer to the Complaint was due on or before January 12, 2022. *Id.* To date, however, the Defendant has failed to answer to the Complaint or otherwise appear.

On June 9, 2022, the Plaintiffs moved for an Entry of Default, which the Clerk of the Court entered on June 13, 2022. (Docket Nos. 16-18). On September 21, 2022, Plaintiffs' Counsel appeared before the Honorable Judge Raul M. Arias-Marxuach for a Status Conference. (Docket No. 20). Plaintiffs were directed to file a Motion for Default Judgment by October 28, 2022. *Id.*

On October 28, 2022, Plaintiffs filed a Motion for Default Judgment seeking damages for unpaid overtime. (Docket Nos. 24-26). While Plaintiffs' Complaint is styled as a "Class/Collective Action," Plaintiffs are not seeking either classification for purposes of their Motion for Default Judgment. On January 19, 2023, the undersigned Magistrate Judge held a hearing regarding Plaintiffs' Motion for Default Judgment. As a result of the hearing, Plaintiffs' counsel was ordered to review the facts "to ferret out any possible instances of double counting of damages." On February 16, 2023, the Plaintiffs filed a revised damage calculation. (Docket No. 36.)

### II. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure requires "a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). Under the first step, a plaintiff must obtain an entry of default from the clerk of the court when a defendant "has failed to plead or otherwise defend."

Fed. R. Civ. P. 55(a). The second step requires the plaintiff to apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

As Defendant has failed to defend against Plaintiffs' allegations, a judgment by default is appropriate in the present action. *See Hawke Cap. Partners, L.P. v. Aeromed Servs. Corp.*, 300 F.R.D. 52, 56 (D.P.R. 2014) (quoting *Rodríguez–Salgado v. Somoza–Colombani*, 937 F. Supp. 2d 206, 211 (D.P.R.2013)) (unexcused failure to respond to a motion for default judgment "authorizes the presiding district judge to summarily grant the unopposed motion, 'at least when the result does not clearly offend equity'"). For purposes of a default motion, the well-pleaded factual allegations set forth in the complaint are accepted as true. *See Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 41 (1st Cir. 2012) ("[w]here the complaint contains facts sufficient to state a claim upon which relief can be granted, the defendant's liability is established at the time of default"); *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1 (1st Cir. 2002) (the court considers "all well-pleaded factual allegations as true, to determine whether [the complaint] alleges a cause of action"); *Franco v. Selective Ins.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.").

A hearing may be required to set damages when the amount is in dispute or is not ascertainable from the pleadings. The First Circuit has held that when a "court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object, the court has the discretion to order a default judgment 'without a hearing of any kind.'" *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002) (quoting *HMG Prop. Invs., Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 919 (1st Cir. 1988)); *Pope v. United States*, 323 U.S. 1, 12, 65 S. Ct 16, 22, 89 L. Ed. 3 (1944) ("if arriving at the judgment amount involves nothing more than arithmetic—the making of computations which may be figured from the record—a default judgment can be entered without a hearing of any kind."); *Katahdin Paper*

*Co., LLC v. U & R Sys., Inc.*, 231 F.R.D. 110, 113–14 (D. Me. 2005) (the court concluded that the Rule 55(b)(2)'s hearing requirement was satisfied based on the complaint and accompanying affidavit and it was unnecessary to proceed with a more formal evidentiary hearing.); *KPS & Assoc. v. Designs by FMC, Inc.*, 318 F.3d 1, 21 (1st Cir. 2003) (where the evidence is sufficient or the "district court [is] intimately familiar with the case," a plaintiff's damages amount may be determined without the holding of an evidentiary hearing on the matter).

### III. Discussion

#### A. Defendant was engaged in interstate commerce

In order to bring an FLSA claim, a plaintiff has the burden to prove "a nexus to interstate commerce sufficient to trigger coverage under the Act." *Martínez v. Petrenko*, 792 F.3d 173, 174 (1st Cir. 2015). Here, Defendant works and performs services throughout the United States and Puerto Rico. Plaintiffs, moreover, were engaged in the processing of Federal Emergency Management Agency grants for Redline's customers. Accordingly, Defendant was engaged in interstate commerce and the FLSA applies. *Cruz v. Boston Litigation Solutions*, 2016 WL 3568254, at *5 (D. Mass. May 24, 2016). ("If enterprise coverage applies, all of the enterprise's employees are protected under the FLSA, even if they are not personally involved in interstate commerce.").

#### B. Plaintiffs were misclassified as "independent contractors"

It is well-settled that, under the FLSA, employers must pay employees overtime compensation for time worked in excess of 40 hours per week, unless the employer can claim an exemption from coverage. *See* 29 U.S.C. § 201, et seq. Under the FLSA, "the term 'employee' means any individual employed by an employer." 29 U.S.C. §§203(e)(1), 203(g).

Courts employ the "economic reality" test to determine if a person is an employee, and thereby entitled to FLSA's protections. *See Sigui v. M + M Commc'ns, Inc.*, 484 F. Supp. 3d 29, 36 (D.R.I. 2020). The economic reality test helps assess whether the totality of the circumstances demonstrate that the person is "a putative

employee economically dependent on their alleged employer." *Id*. (quoting *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998)). Courts consider the following factors to determine a plaintiff's dependency:

> (i) the degree of control exercised by the alleged employer; (ii) the extent of the relative investments of the worker and alleged employer; (iii) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (iv) the skill and initiative required in performing the job; (v) the permanency of the relationship; and (vi) the degree to which the alleged employee's tasks are integral to the employer's business.

*Id*. at 36. The economic reality test is an "aid in determining the underlying question of dependency, and no single factor is determinative." *Id*. (quoting *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 327 (5th Cir. 1993)).

### i.   *Defendant exercised significant control over Plaintiffs*

The primary question for this factor is whether the workers were subject to control "such that they did not stand as 'separate economic entities' who were 'in business for themselves.'" *Sigui*, 484 F. Supp. 3d at 37 (quoting *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1313 (11th Cir. 2013)). To satisfy the control factor, courts look at: (1) control over the employees' performance of work, (2) uniforms, (3) direct supervisory authority, (4) economic power, and (5) work schedules. *Id*.

In this case, the Defendant had significant control over the Plaintiffs. For instance, Redline created and gave the Plaintiffs their schedule and instructed them how to prioritize their projects. (Howard Decl. at ¶¶ 14, 25; Barrington Decl. ¶¶ 15, 25; Taylor Decl. at ¶¶ 16, 26; Pollard Decl. ¶¶ 15, 24); s*ee also Fernández v. Kinray, Inc.*, No. 13 Civ. 4938 (ARR), 2014 WL 7399303, at 4* (E.D.N.Y. Dec. 30, 2014) (finding that defendants' control was sufficient over plaintiffs where plaintiffs were required to report to defendants' warehouses at precise times each day, were given specific delivery routes from which they were not allowed to deviate). With the exception of the two Plaintiffs who used their own personal laptop computers, Plaintiffs did not rely on the use of their own tools to perform work for Redline.

(*See* Howard Decl. at ¶ 16; Barrington Decl. ¶ 16; Taylor Decl. at ¶ 17; Pollard Decl. ¶ 17).

Moreover, Plaintiffs were required to submit their work to Redline's managers for review. (Howard Decl. at ¶ 20; Barrington Decl. ¶ 20; Taylor Decl. at ¶ 21; Pollard Decl. ¶ 23). Plaintiffs were also required to perform their jobs in strict compliance with federal guidelines and in accordance with policies, tools, and forms provided by Redline. (Howard Decl. at ¶ 20; Barrington Decl. ¶ 20; Taylor Decl. at ¶ 21; Pollard Decl. ¶ 21); *see also Proft v. Wilson Sys., Inc.*, 217 F. Supp. 3d 946, 950 (W.D. Tex. 2016) (Defendant set the hourly rate, schedule, assignments, training, supplied tools and equipment, and due to the full-time schedules, precluded plaintiffs from seeking other employment, were sufficient facts to support the contention that plaintiffs were employees). This factor weighs in favor of the Plaintiffs in this case.

        ii.    *Redline's investment was substantial compared to the Plaintiffs'*

"To determine whether a worker's capital investment shows evidence of economic independence, courts 'must compare the worker's investment in the equipment to perform his job with the company's total investment, including office rental space, advertising, software, phone systems, or insurance." *See Sigui*, 484 F. Supp. 3d at 39 (quoting *Keller v. Miri Microsystems LLC*, 781 F.3d 799, at 810 (6th Cir. 2015)). An employee "must make some investment in equipment to properly perform a job but to understand the full economic reality, as well as the level of dependence, it must be compared to the investment made by the putative employer." *Id.* at 40.

Here, Plaintiffs had limited, if any investment, while working for Redline. "Investment in standard tools and other equipment . . . that can also be used for personal use are not fatal to a claim of employee status." *Id.* at 39. Thus, when comparing Plaintiffs' cost to Redline's, it is clear that none had much of an economic risk in comparison to Redline. *See Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998) ("Courts have generally held that the fact that a worker supplies his or her own tools or equipment does not preclude a finding of employee

status"); *Hart v. Rick's Cabaret International, Inc.*, 967 F. Supp. 2d 901, 920 (S.D.N.Y. 2013) (finding that the economic risk undertaken by the defendant strip-club, a business that invested millions of dollars per year to operate the establishment, vastly outweighed the risks undertaken by the plaintiff exotic dancers, who simply paid for clothes, make-up, a performance fee, and sometimes tips). This factor also weighs in favor of the Plaintiffs.

        iii.    *Plaintiffs had no opportunity for profit and loss*

Under this prong, courts question "whether employees 'had an opportunity for greater profits based on [their] management and technical skills.'" *Sigui*, 484 F. Supp. 3d at 37 (quoting *Keller*, 781 F.3d at 812). "This factor does not depend upon whether a worker can work more efficiently, and therefore make more money; rather, it depends on the worker's ability to profit in relation to business decisions such as investment and administration." *Id.* at 38

Plaintiffs were paid a set hourly rate that was non-negotiable and they were unable to earn any additional compensation. (*See* Howard Decl. ¶ 6 ($65 per hour); Barrington Decl. ¶ 7, ($90 per hour); Taylor Decl. ¶¶ 7, 29 (started at $55 and ended at $65 per hour); Pollard Decl. ¶ 21 ($70 per hour)). Where, as here, a plaintiff receives a set rate of pay and her hours are dictated by a defendant, that plaintiff lacks the requisite opportunities to profit from her work. S*ee Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 348 (E.D.N.Y. 2015) (no opportunity for profit where defendant paid plaintiffs set hourly rates); *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 308 (4th Cir. 2006) (holding that the evidence did not support a finding that managerial skill and business acumen could affect plaintiffs' profits when the employer dictated the rate of pay and schedule, and it was not possible to finish a job more efficiently in order to perform another job). This factor also weighs in favor of the Plaintiffs.

> iv. *Plaintiffs' employment did not require a certain degree of skill and independent initiative*

"This inquiry is focused on whether an individual's profits increased because of the 'initiative, judgment[,] or foresight of the typical independent contractor,' or whether his work 'was more like piecework.'" *Sigui*, 484 F. Supp. 3d at 38 (quoting *Keller*, 781 F.3d at 809). Here, none of the Plaintiffs had specialized degrees nor advanced training that would have assisted them in performing their duties. (*See* Howard Decl. ¶ 30; Barrington Decl. ¶ 31; Taylor Decl. at ¶ 32; Pollard Decl. ¶ 29). Redline provided procedural training and information sessions regarding FEMA regulations and Plaintiffs' duties were performed in compliance with federal guidelines and policies provided by Redline. (*See* Howard Decl. ¶ 15; Pollard Decl. ¶ 16).

Furthermore, Plaintiffs did not obtain additional independent jobs nor job assignments due to any specialized skills; their work was provided solely by Redline. (*See* Howard Decl. at ¶ 29; Barrington Decl. ¶ 30; Taylor Decl. ¶ 31; Pollard Decl. ¶ 28). *See also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988) ("A variety of skilled workers who do not exercise significant initiative in locating work opportunities have been held to be employees under the FLSA"); *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1443 (10th Cir. 1998) (citing *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1295 (3d Cir. 1991)) ("[T]he use of special skills is not itself indicative of independent contractor status, especially if the workers do not use those skills in any independent way."). Thus, this factor favors finding that Plaintiffs were employees.

> v. *Plaintiffs were hired for an indefinite period of time*

"Generally, independent contractors have variable or impermanent working relationships with the principal company because they often have fixed employment periods and transfer from place to place as work is offered to them, whereas employees usually work for only one employer and such relationship is continuous and indefinite in duration." *Keller*, 781 F.3d at 807. Courts have "accorded limited

weight to this factor, in comparison with the others considered under the FLSA test." *Hart*, 967 F. Supp. 2d at 921.

Here, each of the Plaintiffs were hired for an indefinite period and continued to work until they were fired, or they quit. (Howard Decl. ¶ 27; Barrington Decl. ¶ 28; Taylor Decl. ¶ 29; Pollard Decl. ¶ 26). Courts facing similar facts have found this factor to weigh in favor of "employee" status. *See Tassy v. Lindsay Ent. Enterprises, Inc.*, No. 3:16-CV-77-RGJ, 2022 WL 801279, at *4 (W.D. Ky. Mar. 15, 2022) (Because "[p]laintiffs worked exclusively [for defendant and] for a longer period of time, a reasonable juror could only conclude that this factor weighs heavily in favor of [p]laintiffs."); *Gilbo v. Agment, LLC*, 831 F. App'x 772, at 776 (6th Cir. 2020) (finding "employee" status where exotic dancers had worked no more than one year). Moreover, "[t]his factor focuses not just on length, but also exclusivity." *Tassy*, 2022 WL 801279, at *4.

Here, the Plaintiffs worked exclusively for Redline because the schedule Redline mandated did not leave any room for additional work. (Howard Decl. ¶ 29; Barrington Decl. ¶ 30; Taylor Decl. ¶ 31; Pollard Decl. ¶ 28). "This schedule made it effectively impossible for plaintiffs to perform work for any other employer." *Sigui*, 484 F. Supp. 3d at 41. This factor weighs in the Plaintiffs' favor.

      vi.    *Plaintiffs work was integral to Defendant's business*

"The more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship." *Sigui*, 484 F. Supp. 3d at 40 (citing *Keller*, 781 F.3d at 815). "Individuals are more likely to be employees if they perform 'the primary work of the alleged employer.'" *Pérez v. Super Maid, LLC*, 55 F. Supp. 3d 1065, 1078 (N.D. Ill. 2014) (quoting *Donovan v. DialAmerica Mktg. Inc.*, 757 F.2d 1376, 1385 (3d Cir. 1985)).

Defendant Redline offers disaster relief services. Therefore, without relief workers such as the Plaintiffs, Redline would be unable to provide the necessary disaster relief services to their customers. It thus pellucid that Plaintiffs' work was

essential to Redline's business. Accordingly, the economic reality test supports a finding that Plaintiffs were Redline's employees and Redline was their employer.

In conclusion, after employing the "economic reality" test to determine if the Plaintiffs were employees of Redline, and thereby entitled to FLSA's protections, the Court finds that the totality of the circumstances show that Plaintiffs were putative employees economically dependent on Redline, their employer. *See Baystate Alternative Staffing, Inc.*, 163 F.3d at 675.

### C. Unpaid Overtime

Because Plaintiffs were employees, Redline was required to pay them in accordance with the FLSA, which requires employers to compensate their employees at no less than 1.5 times their regular rate of pay for all hours worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207(a)(1). Despite this, Defendant compensated Plaintiffs at their regular rate of pay for all hours worked. The Court finds that such practice violated the FLSA.

### D. Plaintiffs' Damages

#### i. Applicable Statute of Limitations

The statute of limitations under the FLSA is ordinarily two years but may be extended to three years if the cause of action arises out of a willful violation of the Act. 29 U.S.C. § 255(a). "The FLSA's limitations period creates an affirmative defense that is forfeited if not raised in a defendant's answer or an amendment thereto." *See Gunawan v. Sake Sushi Restaurant*, 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012). Therefore, when a defendant is in default, the defendant forfeits any affirmative defense regarding willfulness under the FLSA. *Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 190 (D.D.C. 2016); *see also John R. Sand & Gravel Co. v. U.S.*, 552 U.S. 130, 133, (2008) (holding that "the law typically treats a limitations defense as an affirmative defense that the defendant must raise at the pleadings stage and that is subject to rules of forfeiture and waiver"); *Stewart v. Next Level Sec. Servs., LLC*, No. 8:19-CV-2144-PWG, 2021 WL 365835, at *4 (D. Md. Feb. 3, 2021) (the well-pleaded facts, taken as true due to defendants' default establish that the

defendant failed to pay overtime, despite knowing that the employees were working overtime). Therefore, in light of Redline's failure to rebut Plaintiffs' claim of willfulness and the allegations in Plaintiffs' well-plead Complaint, Plaintiffs are entitled to the FLSA's full three-year statute of limitations.

### ii. *Liquidated Damages*

The FLSA provides for liquidated damages in addition to actual damages. 29 U.S.C. 216(b). Liquidated damages are intended to serve as compensation for the delay in payment of wages owed to the plaintiff. *Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 262 (D. Mass. 2011); *see also Lupien v. City of Marlborough*, 387 F.3d 83, 90 (1st Cir. 2004) (liquidated damages under the FLSA are meant to redress employees wage violations.). Under the FLSA, if a plaintiff proves that the defendant violated Section 207, "the court must grant liquidated damages." *See* 29 U.S.C. §216(b). Liquidated damages are mandatory unless the defendant shows that its actions or omissions were done in good faith and that there were reasonable grounds for their belief that they were not violating the FLSA. *See Scalia v. Evolution Quality Guard, Inc.*, 2020 WL 1492782, 8 (D.P.R. Mar. 27, 2020). Pursuant to the FLSA, liquidated damages are "meant to compensate employees for the losses that the employees have suffered by reason of not receiving money due them at the time that it was due." *Evolution Quality Guard, Inc.*, 2020 WL 1492782 at *8 (quoting *Herman v. Hector I. Nieves Transp., Inc.*, 91 F. Supp. 2d 435, 449 (D.P.R. 2000), aff'd, 244 F.3d 32 (1st Cir. 2001)). "Double damages will be the norm, and single damages will be the exception." *Herman v. Hogar Praderas de Amor, Inc.*, 130 F. Supp. 2d 257, 267 (D.P.R. 2001).

Here, because Redline has failed to answer Plaintiffs' Complaint, and is therefore in default, Redline cannot meet its burden to demonstrate "good faith." The Court therefore credits Plaintiffs' allegation that Redline's conduct was willful. *See Wicaksono v. XYZ 48 Corp.*, No. 10 CIV. 3635 LAK JCF, 2011 WL 2022644, at *6 (S.D.N.Y. May 2, 2011), *report and recommendation adopted*, No. 10 CIV. 3635 LAK, 2011 WL 2038973 (S.D.N.Y. May 24, 2011) ("[T]he defendant is in default, and therefore, the plaintiffs' allegation that its conduct was willful is credited.");

*Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 191 (D.D.C. 2016) (since employers failed to plead or otherwise respond to employee's complaint, their default meant they could not meet their burden to prove a good faith affirmative defense).

### iii. Plaintiffs' damage calculations

Based on the foregoing, Plaintiffs are entitled to unpaid overtime and liquidated damages under the FLSA for three years prior to the filing of the Complaint. On February 16, 2023, Plaintiffs' Counsel submitted revised damage calculations which eliminate the possibility that Plaintiffs would receive duplicative damages under both the FLSA and Puerto Rico law. (Docket No. 36).

Accordingly, using the start and end dates of employment identified by each Plaintiff, counsel determined the total weeks each Plaintiff worked during the relevant period. To account for vacations and holidays, the total amount of weeks worked was reduced by 10% for each Plaintiff. Based on Plaintiffs' declarations, counsel determined the total hours each Plaintiff worked each week. As the Plaintiffs were paid for all hours worked, for every hour worked over 40, Plaintiffs are entitled to damages equal to half of their regular hourly rate.

In addition to unpaid overtime, Plaintiffs are also entitled to liquidated damages equal to their unpaid overtime damages.

At the Court's request, and pursuant to the Motion Hearing held on January 19, 2023, before the undersigned Magistrate Judge, Plaintiffs' Counsel submitted revised damages calculations for each Plaintiff. (*See* Docket No. 36). The revised calculations remove any potential overlap in damages provided by federal and Puerto Rico law. *Id.* Due to the extensive overtime worked by Plaintiffs, damages under the FLSA far exceed available damages under Puerto Rico law. *Id.* As a result, to prevent double recovery of damages, Plaintiffs have removed from their request for damages, the damage calculations for unpaid overtime under the relevant Puerto Rico statutes.

Finding that the damages calculations submitted by the Plaintiffs are reasonable, acceptable, and comply with the applicable law, the Court recommends that damages be awarded to the Plaintiffs as follows:

- Plaintiff Pollard            = $170,496.00 in total damages
- Plaintiff Taylor             = $38,070 in total damages
- Plaintiff Barrington         = $336,312.00 in total damages
- Plaintiff Howard             = $58,332.86 in total damages
- **Total award**              = **$603,210.86**

(*See* Docket No. 36-1).

### E. Plaintiffs are entitled to reasonable attorneys' fees and cost

In an action under the FLSA, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Accordingly, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010) (citation omitted). The Supreme Court has reaffirmed the use of the lodestar method for determining the reasonable fee award. *Id.* ("[T]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.") (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) (citation omitted)).

In the First Circuit, courts follow the "lodestar" method for calculating reasonable attorneys' fees. *See Marcus v. Am. Cont. Bridge League, Inc.*, No. CV 17-11165-FDS, 2022 WL 195082, at *1 (D. Mass. Jan. 21, 2022). In a fee-shifting case, to calculate the lodestar a court determines the base amount of the fee the prevailing party is entitled to by multiplying the number of hours productively expended by counsel, times a reasonable hourly rate. *See Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992); *Marrotta v. Suffolk Cnty.*, 726 F. Supp. 2d 1 (D. Mass. 2010) ("Reasonable amount of fees is determined pursuant to "lodestar approach," which involves calculating 'the number of hours reasonably expended on litigation

multiplied by reasonable hourly rate.'"). As such, Plaintiffs respectfully request that the Court apply the traditional loadstar method in considering their fee request.

In accordance with the lodestar calculations, Plaintiffs' claim for fees is the product of a reasonable number of hours expended multiplied by an appropriate hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Plaintiffs are represented by Frank J. Mazzaferro of Fitapelli & Schaffer, LLP ("F&S") and Jane A. Becker-Whitaker of the Law Offices of Jane Becker. F&S is a nationally recognized employment litigation firm based in New York City that has significant experience prosecuting wage and hour cases. (Docket No. 30 at ¶¶ 1, 3). Counsel Mazzaferro, a partner at F&S with over ten years of experience with the firm, has requested a reduced hourly rate of $475.00 per hour. Katherine Bonilla, an associate with the F&S, seeks an hourly rate of $200.00 per hour. Counsel Becker-Whitaker, a partner at Law Offices of Jane Becker, seeks an hourly rate of $300.00 per hour.

In support of Plaintiffs' Counsels' request for attorney's fees, they have submitted detailed timesheets outlining the time they spent on this matter. In addition, Plaintiffs' Counsel has not sought attorney's fees for administrative personnel or for time spent after filing Plaintiffs' Motion.

Finding the requested hourly rates and time expended on this matter both reasonable and acceptable, the Court recommends an award for attorney's fees in favor of F&S in the amount of $11,972.50 and in favor of the Law Offices of Jane Becker in the amount of $2,820.00.

The Court also recommends that costs be awarded in favor of F&S for the following expenses:

- FedEx to Redline = $40.01
- Complaint = $400
- Service of Complaint = $365

Total award = $805.01

**IT IS SO RECOMMENDED.**

The parties have fourteen days to file any objections to this Report and Recommendation. Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this **11th** day of April 2023.

*[signature]*
MARSHAL D. MORGAN
UNITED STATES MAGISTRATE JUDGE